Carol A. RANNELS and Lynn L. Rannels

v.

S. E. NICHOLS, INC.

Civ. A. No. 77–4299.

United States District Court,
E. D. Pennsylvania.

March 22, 1978.

418

Robert E. Giering, Reading, Pa., for plaintiffs.

Arthur Ed Saylor, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff Carol Rannels, is a citizen of Pennsylvania bringing this diversity action against defendant S. E. Nichols, Inc., a corporation incorporated under the laws of the State of New York with its principal place of business in New York, alleging that defendant is liable for the torts of malicious prosecution and defamation. Although not clearly stated, jurisdiction is apparently invoked under 28 U.S.C. § 1332 by reason of the diversity of citizenship.

Plaintiff alleges that on June 25, 1977, she purchased a pair of ladies' jeans at defendant's store in Ephrata, Pennsylvania, for $8.00, in payment of which plaintiff issued a personal check. Upon returning home she tried on the jeans and found the zipper to be defective. On June 27, she returned to the store with the jeans and demanded either a refund or an exchange for another pair of jeans. Defendant refused to do either. As a result, plaintiff placed a stop-payment order on the check and paid $2.00 to have the defective zipper replaced. On July 1 she offered defendant $6.00 in payment of the jeans. The offer was refused and in a letter dated July 13, 1977, defendant demanded $13.98 in payment, $8.00 for the purchase price of the jeans, $5.00 for a "handling charge", and 98¢ for postage. On August 4, defendant filed a criminal complaint alleging that plaintiff had issued a bad check in violation of the Pennsylvania Crimes Code, despite knowledge by Douglas Stauffer, assistant manager of the aforesaid store, that the check was not issued in violation of the Code and was in fact dishonored because a stop-payment order had been placed on the check because of a dispute over the quality of the merchandise. On August 17, plaintiff received notice of the criminal complaint and immediately went to the District Judge and entered a plea of not guilty. On August 18, plaintiff went to the store and showed the complaint to manager Robert Boyd, asking why it had been sent. Boyd is alleged to have said, "Why, because you attempted fraud in my store". Boyd said he would not withdraw the complaint because defendant would have to pay court costs, then said, "Mrs. Rannels, we have to set an example of you so others don't try to stop payment on goods. Our attorneys will be there and I will be there to make sure you are found guilty and pay the store and the fine and

the costs". Plaintiff alleges that these things were said in the presence of plaintiff's son, a number of customers, and a man being interviewed for a job. During this meeting plaintiff offered $8.00 in payment of the goods, but this offer was refused.

In addition to the above encounter, plaintiff alleges that on August 17 she sent a letter to Manfred Brecker, defendant's president, protesting the actions thus taken, including alleged harassment by telephone. Brecker responded in a letter dated August 22 which allegedly further slandered plaintiff by contending that she had in fact violated the law and condoning the actions previously taken. Plaintiff was ultimately found not guilty of the criminal charge. She eventually paid $6.00 in settlement of the claim outstanding against her. She alleges malicious prosecution because of the criminal complaint and defamation resulting from the Boyd statements and the Brecker letter. She alleges humiliation, harm to her reputation, and great emotional pain. Her husband alleges emotional pain, humiliation and embarrassment, and contends that the emotional stress has harmed their marital relationship. Plaintiff demands $2,800,000.00 plus interest and costs.

Defendant moves to dismiss on two grounds. First it contends that there is no substantive ground for either malicious prosecution or defamation because defendant's actions do not give rise to recovery in tort; thus, the complaint does not state a claim upon which relief can be granted. Defendant also moves to dismiss for lack of subject matter jurisdiction because the amount in controversy is less than $10,000.00.

Regarding the substantive claims, we note that an action for malicious prosecution carries with it two indispensable elements. First, there must be a lack of probable cause for the prosecution. See *Psinakis v. Psinakis*, 221 F.2d 418 (3d Cir. 1955), citing *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 32 A.2d 413 (1943) at 349, 32 A.2d at 415:

"In an action for malicious arrest of the person, the defendant is excused when any one of the following conditions is fulfilled: 'either (a) the plaintiff was in fact guilty of the wrong as charged (just cause); or (b) the defendant (in the civil case) believed and had probable cause to believe the defendant (in the criminal case) guilty (just cause); or (c) the defendant resorted to legal process for the purpose of securing justice upon the plaintiff, and not primarily to gratify personal malice or spite': *Altman v. Standard Refrig. Co.*, 315 Pa. 465, 478, 173 A. 411. * * * ".

In considering the motion we shall assume that well-pleaded factual allegations contained in the complaint are true. In so doing we note the following allegations:

"9. Douglas Stauffer filed the aforesaid complaint knowing that plaintiff, Carol A. Rannels, had not issued a check in violation of the aforesaid Crimes Code. Furthermore, Douglas C. Stauffer did know that the true reason the said check was not honored was because a stop order (sic) had been placed on the check due to a dispute over defective merchandise.

\* \* \* \* \* \*

"15. During all these negotiations Robert Boyd, Manfred Brecker and Douglas Stauffer each knew that Mrs. Rannels had not committed any criminal act and had not attempted to defraud S. E. Nichols (sic) or anyone else."

These statements are not tantamount to factual allegations of a lack of probable cause. Accepting the truth of the allegations that the named individuals knew that plaintiff had placed a "stop order" on the check by reason of a dispute over the quality of the goods, the assertions that said individuals knew that there had been no violation of the Crimes Code are not factual allegations, but legal conclusions. Plaintiff has provided no authority for the proposition that stopping payment on a check issued in payment of goods is not fraud, as a matter of law. Absent such authority we

cannot assume the requisite intent and state of mind as to defendant's agents and the allegations of the complaint fall short and fail to supply the required factual allegations.

The appropriate Pennsylvania statute is 18 Pa.C.S.A. § 4105, which provides as follows:

"§ 4105.  Bad checks

(a) Offense defined.—A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(b) Presumption.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid if:

(1) the issuer had no account with the drawee at the time the check or order was issued; or

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

(c) Grading.—An offense under this section is a misdemeanor of the second degree if the amount of the check or order exceeds $200; otherwise it is a summary offense."

Clearly, plaintiff's check was dishonored and she refused to make good within ten days, the offense that a bad check had been passed was complete. Plaintiff has not alleged that the check was not dishonored or that the check was honored within ten days. Plaintiff's motivation in stopping payment does not establish the state of mind of the defendant or its agents nor is it a valid substitute for the required allegations as to lack of probable cause. Therefore, based upon the facts that have been alleged in the complaint, we find no allegation that defendant's agents lacked probable cause in the initiation of proceedings against plaintiff. She knowingly issued a stop-payment order intending that the check should not be honored and it was not honored. The statutory offense was complete and the defendant acted accordingly.

■ Also, there is no indication that defendant or its agents and employees was or were motivated by malice, which has been defined as resorting to legal process not for the purpose of securing justice but to gratify personal malice or spite. See *Publix Drug Co. v. Breyer Ice Cream Co., supra.* The only allegation relating to motive is in paragraph 11 of the complaint, where plaintiff alleges that when she confronted Boyd and asked why proceedings had been instituted, he responded because she attempted fraud upon defendant and because defendant needed to make an example of her so others would not act in similar manner. Accepting these allegations as true, the only possible inference is that defendant's agents acted to protect the business by bringing plaintiff to justice. There is no allegation of any other motive. Therefore, we find that there is no factual allegation of malice and none can reasonably be inferred from the institution of legal proceedings by the defendant, its agents and employees as set forth in the complaint. Finding that the complaint alleges neither an absence of probable cause nor the presence of malice in the institution of the criminal proceedings against the plaintiff, we shall dismiss the action for malicious prosecution.

■ Regarding defamation, we shall accept as true the allegation that persons other than plaintiff and defendant were aware of both the oral statements by Boyd and the Brecker letter. We are thus assuming that the defamation was in the nature of a libel, and not merely a slander, although we have severe doubts as to whether even this is a fair assumption. What we find is that plaintiff has been accused of committing a summary offense, as is indicated in 18 Pa.C.S.A. § 4105(c). Under the law of Pennsylvania this is not libel per se. As words indicating crime, they do not allege a crime of moral turpitude, a crime that is technically infamous and thus carrying incompetency as a witness, nor a crime subject to infamous pun-

ishment. Thus, they are not actionable per se. See *22 Pennsylvania Law Encyclopedia, Libel and Slander,* § 13, and the cases cited therein.

■ Furthermore, these are not words tending to injure plaintiff in her profession or business, because there is no indication that the accusations touched on plaintiff's ability or integrity as regards her profession, teaching. Statements that impute fraud or want of integrity in one's business, profession or other occupation are ordinarily actionable per se. But, when words claimed to charge fraud or dishonesty in respect to a plaintiff's occupation do not on their face constitute such a charge, they are not actionable per se. See *22 Pennsylvania Law Encyclopedia, Libel and Slander,* § 14, and cases cited therein.

■ Plaintiff has stated in her complaint that the allegations of fraud will harm her "when she attempts to return" to her profession as a school teacher. This is a general and conclusory allegation of *possible or anticipated* professional injury; it is not a factual allegation of a clear and certain injury. Prior cases demonstrate this point. Thus, when a wholesale produce dealer reported a debt which plaintiff did not owe to the Philadelphia Produce, Credit and Collection Bureau and plaintiff was placed on a "black list" and could not purchase on credit, such a statement was actionable per se. *Hartman Co. v. Hyman,* 87 Pa.Super. 358 (1926), *affirmed, J. Hartman & Co. v. Hyman & Lieberman,* 287 Pa. 78, 134 A. 486 (1926). Calling an attorney a cheat is actionable per se, *Rush v. Cavenaugh,* 2 Pa. 187 (1845) as is accusing a merchant of using false weights and measures in his business, *Pfeifly v. Henry,* 269 Pa. 533, 112 A. 768 (1921), or of other deceptive business techniques such as dishonest pricing and deliberate use of inferior materials and practices, *Cosgrove Studio & Camera Shop v. Pane,* 408 Pa. 314, 182 A.2d 751 (1962). Imputing cowardice to a detective is actionable per se, *Holland v. Flick,* 212 Pa. 201, 61 A. 828 (1905), as is an allegation of illegal behavior by a police chief, *Bausewine v. Norristown Herald,* 351 Pa. 634, 41 A.2d 736

(1945), *cert. denied, Norristown Herald v. Bausewine,* 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429 (1945), or a doctor (performance of illegal abortion), *Bryant v. Pittsburgh Times,* 192 Pa. 585, 44 A. 251 (1899). Alleging that a teacher of shorthand was not qualified to teach the system of shorthand she taught and that she was using the name of the system's author without authorization was held actionable per se. *Price v. Conway,* 134 Pa. 340, 19 A. 687 (1890).

■ The thrust of these cases is clear; that an action for libel or slander grounded on the allegation that plaintiff has been injured in his occupation requires some accusation or insinuation that plaintiff is unfit for *that* occupation. In this case, no such allegation exists; there is only the general imputation that plaintiff is guilty of a summary offense having no direct contact with her profession and the statement that this will handicap her when she returns or attempts to return to work. Therefore, we find that these allegedly defamatory statements are not actionable per se on the grounds that plaintiff has been injured in her occupation.

■ Finding no allegation of defamation actionable per se, we note that plaintiff, to recover for defamation actionable per quod must plead special damages. See *McDonald v. Lee,* 246 Pa. 253, 92 A. 135 (1914). No special damages have been pleaded in this case. Therefore, the complaint to the extent that it asserts an action in defamation will also be dismissed.

Defendant also moves to dismiss on the grounds that the Court does not have subject-matter jurisdiction because the amount in controversy is less than $10,000.00. In actions sounding in tort that allege injuries of a general nature and pray for unliquidated damages, determination of the good faith as to allegation of the jurisdictional amount is particularly difficult. Because we have determined that the complaint is to be dismissed for failure to state a cause of action, we need not and do not reach this additional issue. Thus, we obviate the need for a hearing at this time as was required

and utilized in *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971).