Carol A. RANNELS, Lynn L. Rannels, Appellants,

v.

S. E. NICHOLS, INC.

No. 78–1637.

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1978.

Decided Jan. 18, 1979.

Robert E. Giering, Greene & Giering, Reading, Pa., for appellants.

Arthur Ed. Saylor, William W. Runyeon, Edelman, Saylor, Readinger & Poore, Reading, Pa., for appellee.

Before ALDISERT and ADAMS, Circuit Judges, and LATCHUM, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In 1957 the Supreme Court instructed that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." [1] The district court here dismissed a diversity action on the grounds that the complaint did not contain proper "factual allegations" to set forth a claim upon which relief could be granted under the applicable Pennsylvania law of malicious prosecution and defamation. We must decide whether the complaint as drafted met the minimum requirements of Rule 8(a), Federal Rules of Civil Procedure [2] so as to withstand a motion for dismissal under Rule 12(b)(6). [3] Because we hold that it did, we reverse.

### I.

The facts that underlie this lawsuit are traceable to a dispute over $2.00 between a customer and the management of a retail store. This quarrel has now commanded the attention of a Pennsylvania district justice, a United States district court, and the United States Court of Appeals for the Third Circuit, and is the basis of a claim for $2,800,000 in damages. Mrs. Rannels, an unemployed school teacher, seeks to make a "federal case"—as is her right under existing statutes—out of the circumstances that befell her after she purchased a pair of blue jeans for eight dollars at the Nichols Store in Ephrata, Pennsylvania. The following facts are alleged in the complaint filed in the district court.

A day after she purchased the jeans, Mrs. Rannels discovered that the zipper was defective, whereupon she returned to the store and requested a replacement or a refund of the purchase price which she had paid with a personal check. The store refused to oblige. Mrs. Rannels then did two things: she stopped payment on the check and had the jeans repaired at an expense of two dollars. She alleges that she then offered to pay six dollars for the jeans—the purchase price less the cost of repair. The store again refused. Instead it made a demand for $13.98, representing the original cost plus handling and postage. When Mrs. Rannels did not honor this demand, the store's assistant manager, Douglas A. Stauffer, filed a criminal complaint against her, charging violation of the Pennsylvania bad check statute, 18 Pa.C.S.A. § 4105. [4]

---

* Honorable James L. Latchum, of the United States District Court for the District of Delaware, sitting by designation.

1. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

2. Rule 8(a) provides:
   A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

3. Rule 12(b) provides in pertinent part:
   Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

4. 18 Pa.C.S.A. § 4105 provides:
   (a) Offense defined.—A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.
   (b) Presumption.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

After the criminal complaint was filed, Mrs. Rannels returned to the store and offered to pay eight dollars; the offer was refused. She showed the criminal complaint to Robert Boyd, the store manager, who said it had been filed "because you attempted fraud in my store." Appendix at 2, par. 11. He also stated that he would not drop the complaint because the store would have to pay court costs and that "we have to set an example of you so others don't try to stop payment on goods." *Id.* These remarks were made in the presence of other customers, a man being interviewed for a job, and the appellants' son. *Id.*

In addition to visiting the store, Mrs. Rannels wrote to the corporate president of Nichols, Manfred Brecker, explaining the history of the transaction, disclosing that the Ephrata store was criminally prosecuting her under false charges stating that she had attempted fraud. She gave notice of the possible defamation to her character because of her position in the community: "Being the local PTA President and the Superintendent of my Sunday school I wanted you to be aware of the slanderous and libelous actions taken so far by your people and potential defamation of character when this does come to a hearing and a trial if necessary." *Id.* at 6, Exhibit "B." Mr. Brecker's letter in response allegedly showed that he had "a knowledge of the facts" and that he "condoned and supported the malicious prosecution and slandering and libeling" of appellant. *Id.* at 3, par. 14.

The complaint specifically averred that the assistant manager who filed the criminal complaint knew that Mrs. Rannels had not violated the bad check statute but had stopped payment due to a dispute over defective merchandise, *id.* at 2, par. 9, and that "Robert Boyd, Manfred Brecker and Douglas Stauffer each knew that Mrs. Rannels had not committed any criminal act. . . ." *Id.* at 3, par. 15. Mrs. Rannels

(1) the issuer had no account with the drawee at the time the check or order was issued; or

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make

was acquitted of the criminal offense and later paid the store six dollars "in full settlement" of its claim. *Id.*, pars. 16, 17.

With only the plaintiffs' complaint and exhibits before it, the district court granted Nichols' motion to dismiss. It found plaintiffs' claim for malicious prosecution fatally defective because plaintiffs failed to aver "factual allegations of a lack of probable cause" on the part of Nichols in bringing the criminal charges, determining that "the allegations of the complaint fall short and fail to supply the required factual allegations," and that plaintiffs did not aver malice. *Rannels v. S. E. Nichols, Inc.*, 447 F.Supp. 417, 419–20 (E.D.Pa.1978). The defamation count was dismissed because "[n]o special damages have been pleaded in this case." *Id.* at 421. We conclude that the district court erred in both of these critical decisions.

## II.

This court has previously described the relevant Pennsylvania law:

Under the law of Pennsylvania, which governs the rights of the parties to the present suit, the elements necessary to support an action for malicious prosecution are (1) the termination in the complainant's favor of the criminal proceedings involved in the action, (2) want of probable cause for the criminal proceedings, and (3) malice. *Stinson v. Smith et al.*, 329 Pa. 177, 181, 182, 196 A. 843; *Altman v. Standard Refrigerator Co., Inc.*, 315 Pa. 465, 477, 173 A. 411; *Painter v. Roth et al.*, 118 Pa.Super. 474, 477, 180 A. 49; *Randall v. Fenton Storage Co.* (*Randall v. Seligman*) (two cases), 117 Pa.Super. 212, 214, 177 A. 575.

*Hornin v. Montgomery Ward & Co.*, 120 F.2d 500, 503 (3d Cir. 1941). Probable cause in malicious prosecution cases has been defined by the Pennsylvania Supreme Court

good within ten days after receiving notice of that refusal.

(c) Grading.—An offense under this section is a misdemeanor of the second degree if the amount of the check or order exceeds $200; otherwise it is a summary offense.

as "a reasonable ground for belief, or . . . 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' The test is the prosecutor's belief of the existence of probable cause at the time, based upon reasonable grounds." *Mitchell v. Logan*, 172 Pa. 349, 352, 33 A. 554, 555 (1896).

Measured against these precepts we find that appellants sufficiently averred lack of probable cause under the Federal Rules. Their complaint stated that the appellee knew the true reason for the stop order was a dispute over defective merchandise. This obviates the possibilities that the check was not honored because Mrs. Rannels had no account with the drawee bank or because of a lack of funds, the presumptive bases of the Pennsylvania bad check law. The complaint also stated that three agents of Nichols, including its president, "knew that Mrs. Rannels had not committed any criminal act and had not attempted to defraud," appendix at 3, par. 15, yet they nevertheless brought the criminal charges.

The district court characterized these as "not factual allegations, but legal conclusions." 447 F.Supp. at 419. In so doing, the court failed to heed the admonition of the Supreme Court that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley v. Gibson, supra,* 355 U.S. at 47–48, 78 S.Ct. at 103 (footnotes omitted).

The district court's characterization also resurrected a discrete problem of code pleading which the Federal Rules were designed to eliminate: the distinction among pleaded "facts," "evidence," and conclusions of "law." [5] This distinction is no longer extant and a court is ill-advised to rely on a chimerical distinction extinct since 1938. "Unlike the codes and the Equity Rules, the Federal Rules of Civil Procedure make no mention of 'facts' and there is no requirement that facts be stated in a certain manner or in any requisite number. Judge Clark has said that 'by omitting any reference to "facts" the Federal Rules have avoided one of the most controversial points in code pleading.'" 5 C. Wright and A. Miller, Federal Practice and Procedure § 1218, at 134 (1969) (footnotes omitted). "The Federal Rules have avoided one of the sore spots of code pleading. The federal courts are not hampered by the morass of decisions as to whether a particular allegation is one of fact, evidence or law. All that is required is a 'short and plain statement of the claim showing that the pleader is entitled to relief.' This requirement should be observed." 2A Moore's Federal Practice, Par. 8.13, at 1692–93 (2d ed. 1948) (footnotes omitted).[6]

---

5. "The codes required the pleader to set forth the facts underlying and demonstrating the existence of his cause of action. In the parlance fashionable during that era, the facts that were to be pleaded were the 'ultimate facts'; the inclusion of 'evidence' and 'conclusions of law' was improper. This compartmentalization proved to be a chimera. As a result much time and effort were expended in countless cases attempting to distinguish ultimate facts from evidence and conclusions of law. Unfortunately, as was amply demonstrated by years of frustrating experience, it was difficult, if not impossible, to draw meaningful and consistent distinctions among 'evidence,' 'facts,' and 'conclusions.'" 5 C. Wright and A. Miller, Federal Practice and Procedure § 1218, at 133 (1969).

6. "Ancestor worship in the form of ritualistic pleadings has no more disciples. The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action is past. Under Federal Rules of Civil Procedure, a complaint is not an anagramatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases."

By 1962 the Supreme Court would say: "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' *Conley v. Gibson*, 355 U.S. 41, 48, [78 S.Ct. 99, 103]. The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1." *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ The district court also concluded that "there is no indication that defendant or its agents and employees was or were motivated by malice, . . ." 447 F.Supp. at 420, and that "the complaint alleges neither an absence of probable cause nor the presence of malice in the institution of the criminal proceedings . . . ." *Id.* Here the court was clearly wrong because it overlooked the specific allegation in paragraph 14 of the complaint averring that Nichols' president "supported the malicious prosecution." [7]

Moreover, Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Measured by these standards, plaintiffs' averments in paragraphs 9, 11, 14 and 15 constitute an allegation of malice more than sufficient to withstand a Rule 12(b)(6) motion.

*Thompson v. Allstate Insurance Co.*, 476 F.2d 746, 749 (5th Cir. 1973) (per Judge John Minor Wisdom).

7. In addition to determining a lack of proper allegations, the district court's opinion may be interpreted as a decision on the merits finding, as a matter of law, that the defendant had probable cause to bring the prosecution. 447 F.Supp. at 420. Under Pennsylvania law, this determination is a preliminary question for the court. But as we have previously observed, "[t]he existence of probable cause *on facts clearly shown* is ordinarily a question for the judge to decide. See Restatement, Torts, vol. III, p. 381, and *Morphy v. Shipley*, supra, 351

## III.

Appellants' defamation claim was dismissed because the court determined that defamation actionable per se was not alleged and that "[n]o special damages have been pleaded in this case." 447 F.Supp. at 421. Apparently, the litigants failed to direct the court's attention to our discussion in *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.*, 367 F.2d 625, 628–29 (3d Cir. 1966):

At this point, we must note a distinction which is most important. The determination of whether particular words are actionable without proof of special damages ("actionable per se") is without question a matter of state substantive law. *Sweeney v. Philadelphia Record Co.*, 126 F.2d 53 (C.A.3, 1942); *Sweeney v. Schenectady Union Pub. Co.*, 122 F.2d 288 (C.A.2, 1941). Not to be confused with this determination is whether a particular publication is defamatory on its face ("defamatory per se," "libelous per se," or "slanderous per se"). This latter determination is strictly procedural and means only that an "innuendo" must be or need not be pleaded. The authorities tell us that these pleading requirements are ofttimes ridiculous and frequently result in injustice. McCormick, Damages § 113 at 417–419; Prosser, Torts § 92 at 79 et seq. (2d ed.). Since the Federal Rules greatly reduced the importance of technical pleading, we need only state that these technical rules must give way when they come in conflict with our simplified rules

Pa. [425,] at page 431, 41 A. [671,] at page 674 [1945]." *Psinakis v. Psinakis*, 221 F.2d 418, 424 (3d Cir. 1955) (emphasis added). Without expressing an opinion whether the determination must be made at trial, at the conclusion of the plaintiffs' case-in-chief in liability or at some pre-trial stage, we conclude that on the basis of *this* record, the court—if it did decide on the merits—was not in the position to make a reasoned judgment on this issue. *See generally* Note, *What Constitutes Malice and Want of Probable Cause in an Action for Malicious Prosecution in Pennsylvania*, 28 Temple L.Q. 242, 246–48 (1954).

of pleading. *Continental Collieries v. Shober*, 130 F.2d 631 (C.A.3, 1942); see also *Watson v. Cannon Shoe Co.*, 165 F.2d 311, 313 (C.A.5, 1948).

■ We reverse the court's determination that special damages were not alleged for we have concluded that to the extent specificity is demanded by Rule 9(g), items of special damage were specifically stated in paragraphs 18–21 of the complaint, to-wit, that Mrs. Rannels had enjoyed a good reputation in the community, that after the defamation she suffered "pain, humiliation and embarrassment," and that when she returns to the teaching profession "she will be handicapped by the criminal charge that has been brought against her." Her husband made a specific claim for loss of consortium and alleged additionally that he suffered "pain, humiliation and embarrassment."

Although the cases are not uniform,[8] it is apparent that our court has cast its lot with those jurisdictions permitting wide latitude in pleadings. *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc., supra,* and cases cited therein. We have traditionally expressed the view espoused by Professors Wright and Miller: in diversity cases, "whether special damages have been sufficiently pleaded is to be determined under Rule 9(g); furthermore, the general federal pleading principles set out in Rule 8 and the pleading form prescribed by Rule 10 apply and considerable liberality is in order." Wright and Miller, *supra,* § 1311, at 450–51.

■ The justification for our view lies in a recognition that the purpose of pleadings is to give notice of the claim that is being made. If adequate notice is not contained in the complaint, the defendant may move for a more specific pleading under Rule 12(e), or he may obtain more information by discovery. Moreover, the district courts in this circuit traditionally, in the absence of

prejudice to the defendant, have permitted generous amendments to complaints under Rule 15(b) to prevent dismissal. *See, e. g., Sixth Camden Corp. v. Township of Evesham,* 420 F.Supp. 709, 720 (D.N.J.1976); *Wolff v. Calla,* 288 F.Supp. 891, 894 (E.D. Pa.1968); *Jenn-Air Products Co. v. Penn Ventilator, Inc.,* 283 F.Supp. 591, 595 (E.D. Pa.1968); *Davis v. Yellow Cab Co.,* 35 F.R.D. 159, 161 (E.D.Pa.1964); *Coopersmith Bros., Inc. v. Stefko Blvd. Shopping Center, Inc.,* 30 F.R.D. 1, 2 (E.D.Pa.1962).[9]

Without expressing any view on the merits, we remand for the district court to reconsider whether a determination can properly be made on the per se—per quod issue at a pretrial stage of the proceedings, in light of this court's discussion in *Altoona Clay Products, Inc., supra,* or whether this issue will have to be tried.

The appellee also moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis of the rule of *Nelson v. Keefer,* 451 F.2d 289 (3d Cir. 1971): after pretrial hearing, the court may prevent a case from going to trial if convinced *to a legal certainty* that the evidence would not permit it to sustain a verdict that exceeds the sum or value of $10,000. *See* 451 F.2d at 298. The district court properly determined on the facts presented here that it could entertain such a motion only after a hearing. 447 F.Supp. at 421–22.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

**8.** See cases collected in 2A Moore's Federal Practice Par. 9.08 (2d ed. 1948); 5 Wright and Miller, Federal Practice and Procedure § 1311 (1969).

**9.** Four decades ago, our court, speaking through Judge Kalodner, expressed the policy of this court: "Ordinarily, courts exercise discretion liberally in permitting amendments, so as not to deprive a litigant of a chance to bring his case to trial." *Wilson v. Lamberton,* 102 F.2d 506, 507 (3d Cir. 1939).