Clemence **ETIENNE**, Appellants,

v.

Dr. Augustine **OYAKE**, Appellee.

Nos. DC CIV 2000/99, TC CIV. 513/1995.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

Nov. 29, 2004.

Lee J. Rohn, Esq., St. Croix, VI, for Appellant.

Wilfredo A. Geigel, Esq., St. Croix, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and AUDREY L. THOMAS, Judge of the Territorial Court, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

Clemence Etienne ("appellant" or "Etienne") appeals the trial court's dismissal of her action and presents the following issues on appeal:

1) Whether the two-year statute of limitations was tolled by the appellee doctor's alleged concealment of medical records associated with this claim;

2) Whether the statute of limitations was tolled where the appellee failed to advise the appellant of his malpractice, as required under the Virgin Islands Medical Malpractice Act;

3) Whether the statute of limitations was tolled by the appellant's filing of a proposed malpractice complaint with the Medical Malpractice Review Committee and that body's failure to file an expert report.

4) Whether appellant's "First Amended Complaint" relates back to the filing of the original action.

Implicit in the arguments presented here is also a more foundational issue which affects the resolution of this appeal—that is, whether the plaintiff's original filing in Civil No. 513/1995 was even a complaint to which an amendment and the relation back doctrine could apply. We conclude the Territorial Court committed error when it determined the appellant's filing commencing this action was not in a form which may be recognized as a complaint and which could not, therefore, be altered by amendment pursuant to Federal Rule of Civil Procedure 15.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

The underlying facts of this case are largely in dispute. Etienne asserts she was a patient of the appellant, Augustine Oyake ("Dr. Oyake" or "appellee"), and was under his care for many years, at least since 1992. [Joint Appendix ("J.A.") at 9–10]. She said he never diagnosed her diabetes. Appellant asserts that she consulted with Dr. Oyake following a fall and resulting injury to her left foot in January 1994. [Id.]. Etienne said that during that visit, Dr. Oyake gave her an unknown

injection and prescribed medication. Etienne further contends she visited Dr. Oyake regarding the injured foot "on numerous occasions following her initial visit" until January 24, 1994, when he finally advised her to seek treatment at the hospital. [Br. of Appellant at 5]. At the time of her injury, Etienne was unaware she was diabetic. As an apparent result of complications resulting from her diabetic condition, Etienne's injured leg was ultimately amputated by doctors at the Juan Luis Hospital. [Id.].

Oyake contends, however, that Etienne was never under his regular medical care. [Br. of Appellee at 1]. Rather, he said she delivered plants to his office and he gratuitously agreed, on occasion, to tend to her medical concerns on request.[1] Oyake asserts he provided gratuitous service on only two prior occasions—in September and October of 1992. Those consultations are documented in the record. [J.A. at 44–45]. Dr. Oyake additionally concedes Etienne visited his office in January 1994—for the first time since her October 1992 visit—complaining of a wound to her left foot. [Br. of Appellee at 1]. He said he advised Etienne that, as an obstetrician/gynecologist, he did not handle such cases but, nonetheless, agreed to look at the injury. After looking at the injury and realizing the seriousness of Etienne's apparently gangrenous condition, Dr. Oyake said he provided no treatment but, rather, simply changed the dressing Etienne had on the wound and immediately took her to the Emergency Room. [Id.]. Etienne thereafter remained in the care of the Juan Luis Hospital until the injured leg was finally amputated on February 24, 1994. [Id. at 2].

The appellant initially filed a Miscellaneous Action seeking to discover medical rec-

[1] Oyake contends he gave care as a "Good Samaritan." We need not address Good Samaritan principles and its effect, if any, on possible liability, because that is not necessary for resolution of the issues raised here and, in fact, was not dealt with below.

ords from Oyake. That action was dismissed, after the court determined that such discovery must be conducted as part of a duly filed civil action. Appellant subsequently filed the instant civil action on August 1, 1995—within the two-year statute of limitations—requesting compelled discovery and including a general prayer of relief. [J.A. at 9–10]. At the same time, appellant filed a proposed complaint with the Medical Malpractice Action Review Committee, specifically alleging medical malpractice and including a prayer for damages. [J.A. at 13–15]. That committee never produced an expert report, as required under the medical malpractice statute. The court ordered appellee to produce the documents requested by appellant; however, it is disputed whether those records were ever produced. On March 3, 1999, the appellant moved to amend her complaint to expound on the facts and include a specific prayer of damages. [J.A. at 48]. That motion was granted without objection, and the amendment was filed. [J.A. at 64]. Still having received no responsive pleading from the appellee, the appellant moved for entry of default on the issue of liability. The appellee responded with a motion for extension of time to file an Answer and, on February 2, 2000, submitted a motion to dismiss. Based on that motion, the court on July 13, 2000 entered an order dismissing the complaint and held the prior amendment was improvidently granted. [J.A. at 2–4]. This appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

 This Court has appellate jurisdiction to review judgments and orders of the Territorial Court in all civil cases. See V.I. CODE ANN. tit. 4, § 33(1997 & Supp. 2003); Section 23A of the Revised Organic Act of 1954.[2] Our review of the court's application of legal precepts is plenary; however, we review factual findings for clear error. See Poleon v. Government of the V.I., 184 F.Supp.2d 428 (D.Virgin Islands 2002). We afford plenary review to the court's dismissal of the complaint and will uphold the dismissal only if, accepting all of the allegations in the complaint as true, it is beyond doubt that no relief could be granted under any set of facts that would entitle the claimant to relief. See Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir.2001); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80(1957).

### B. Motion to Dismiss

Etienne argues, inter alia, the trial court committed error in dismissing her action on grounds there was never any valid Complaint before the court. She asserts her initial filing sufficiently put Dr. Oyake on notice of the malpractice claim and the transaction on which it was based and urges that her "First Amended Complaint," which the court initially permitted, related back to the original filing on August 1, 1995 under the provisions of Federal Rule of Civil Procedure 15 and is, therefore, with the two-year statute of limitations. She also urges, in the alternative, that the statute of limitations was tolled by several circumstances: 1) Dr. Oyake's alleged concealment of her medical records; 2) his knowledge of and failure to advise her of his malpractice as required by statute; and 3) the filing of a

---

2. See Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), reprinted in V.I.Code Ann. 73–177, Historical Documents, Organic Acts, and U.S. Constitution(1995 & Supp.2003)(preceding V.I.Code Ann. tit. 1).

proposed malpractice complaint with the Medical Malpractice Review Committee, and that committee's failure to procure an expert opinion to date. Essential to our resolution of the tolling issues and, ultimately, the propriety of the trial court's conclusions, is a determination that the August 1, 1995 document Etienne filed with the Territorial Court in Civil NO. 513/1995 was a civil complaint.

### 1. Was Original Filing a Complaint?

█ Prior to the federal rules, there were recognized two distinct actions—in equity and in law—each carrying technical pleading requirements. *See* FED. R. CIV. P. 1. A main concern of the drafters of the federal rules was eradicating that distinction in order to simplify the pleading procedure and move away from a technical pleading system. *See id.*; FED. R. CIV. P. 8(e); *see also Rannels v. S.E. Nichols, Inc.*, 591 F.2d 242, 245–46 (3d Cir.1979). With the promulgation of the Federal Rules of Civil Procedure, those two forms were merged, the result being that only the filing of a "complaint" is required to commence a civil action—regardless of whether the claims or the remedies lie in equity or at law. *See* FED. R. CIV. P. 2, 3. The Territorial Court's rules on this issue also substantially mirror rules 2 and 3 of the federal rules. *See* Terr. Ct. R. 21–22.

█ Consistent with this merger and with the goal of simplifying the process for initiating a civil action, the Supreme Court additionally adopted liberal pleading rules to replace the complicated code pleading of the past. *See* FED. R. CIV. P. 8; *see also* CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1471 (1990). Under these notice pleading rules, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). This requirement has been con-

strued to require that a plaintiff state only a set of facts giving rise to a claim; he is not required to state the legal theory behind the claim or the statutory basis for such claim, "so long as the defendant has enough information to frame an answer and to commence discovery." *See e.g., Barlow v. Pep Boys, Inc.*, 625 F.Supp. 130, 132 (E.D.Pa.1985)(*pro se* action); WRIGHT & MILLER § 1216 (notice of transaction upon which claim is based is sufficient). This relaxed pleading requirement has now become a key element in promoting the policy favoring decisions on the merits and against having claims rise or fall on the pleadings. *See e.g., Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Moreover, we are cautioned to liberally construe the pleading requirements of Rule 8 and to grant dismissals based on the pleadings only in those circumstances where a party has utterly failed to plead any set of facts which could form the basis of a cognizable claim. Under Rule 8, the key inquiry in determining the sufficiency of a complaint is whether the defendant has "fair notice" of the nature and basis of what he must defend against. *See Continental Collieries v. Shober*, 130 F.2d 631, 635 (3d Cir.1942). Thus, so long as the court can discern from the facts a cognizable basis for relief, the notice requirement of Rule 8 is met. *See* FED. R. CIV. P. 8(f)(must be construed to do substantial justice); *see also Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir.1990)(If a fair reading of the facts would make clear a claim of relief, then the complaint is sustainable). Expressing the policy disfavoring technical construction of pleadings, the Supreme Court noted:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep

by counsel may be decisive to the out-come and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Foman v. Davis,* 371 U.S. 178, 181–82(1962)(quoting *Conley,* 355 U.S. at 48, 78 S.Ct. 99)(internal quotation marks omitted). Against this backdrop, the trial court's rejection of the appellant's filing as a "complaint" must be reversed.

 The Territorial Court's ruling harkens back to the equity-versus-law distinction which predated the federal rules, when substance was often overcome by form. Notwithstanding the court's prior rejection of a miscellaneous action and its admonition to counsel to initiate a civil action prior to undertaking discovery, the court held that the document styled as a "Complaint" was nothing more than an action in the nature of an equitable "bill of discovery." In so holding, the court also reasoned that Etienne did not request damages in her prayer of relief which, it determined, pointed to an indication no Complaint was contemplated. However, it is axiomatic that the prayer of relief is not determinative of the sufficiency of a complaint, and any deficiency in the prayer is best cured by amendment, prior to or during trial. *See e.g.,* WRIGHT AND MILLER § 1255. Rather, as earlier stated, the court should have looked to the facts in the complaint and determined whether that document gave fair notice to the defendant that he would be called to defend against a claim of malpractice. Etienne's pleading was styled as a "Complaint" and alleged the following:

4. Plaintiff is a long time patient of Defendant Dr. Oyake.

5. During the time plaintiff was defendant's patient, defendant treated plaintiff in January, 1994 for an injury to her foot.

6. In treating plaintiff, defendant gave plaintiff a shot of an unknown substance and prescribed medication.

7. Plaintiff consulted defendant on several occasions for this injury.

8. Soon thereafter, plaintiff had to have her leg amputated.

9. Plaintiff is in need of her medical records from Dr. Oyake to determine whether, in fact, defendant's mistreatment of her caused the condition which led to her amputation.

[J.A. at 9–10]. Viewed liberally, as it must be, the Complaint adequately—although perhaps inartfully—informed Dr. Oyake of the transaction in question and the challenged conduct, and put him on notice that he may be called to defend against claims that his treatment of Etienne constituted malpractice. Any suggestion that Oyake had no notice of that claim is further negated by the fact that Etienne had also served notice of her intent to sue with the Medical Malpractice Review Committee, in which she specifically claimed medical malpractice.

 Finally, the trial court's construction of the Complaint as a mere "bill of discovery" appears inconsistent with the federal rules and the policies underlying them. The bill of discovery is a remnant of the pre-rules system and was the prime method of conducting discovery. *See e.g., Wimes,* 573 F.Supp. at 333–34. However, to the extent discovery is sought from parties to an action, that process is now governed by the discovery rules as part and parcel of a pending litigation and need not be pled in a separate action. *See* FED. R. CIV. P. 26–37. Those rules permit compelled discovery from only parties to an action, however; the rules do not empower courts to order discovery from third parties. *See* Fed.R.Civ.P. 34(a), 34(c)and advisory committee notes. Where discovery is sought from a non-party, the court's

subpoena power may be invoked pursuant to Rule 45. *See* Fed. R. Civ. P. 34(c), 45. Indeed, a bill of discovery is not provided for in the federal rules—or in any local rule. However, in recognition of the limited scope of the discovery rules and the potential difficulties in obtaining essential information from third parties, the advisory committee made clear that Rule 34(c) was not intended to prohibit independent equitable actions to compel information *from non-parties:*

> Rule 34 as revised continues to apply only to parties. Comments from the bar make clear that in the preparation of cases for trial it is occasionally necessary to enter land or inspect large tangible things in the possession of a person not a party, and that some courts have dismissed independent actions in the nature of bills in equity for such discovery on the ground that Rule 34 is preemptive. While an ideal solution to this problem is to provide for discovery against persons not parties in Rule 34, both the jurisdictional and procedural problems are very complex. For the present, this subdivision makes clear that Rule 34 does not preclude independent actions for discovery against persons not parties.

Fed. R. Civ. P. 34(c) advisory committee notes. Hence, some jurisdictions continue to permit independent equitable actions to compel information from *non-parties* which may otherwise be unobtainable under the discovery rules. *See e.g., Lubrin v. Hess Oil V.I. Corp.,* 109 F.R.D. 403 (D.Vi.1986)(permitting independent discovery action to aid the plaintiff in inspecting the premises of a third party to inspect the equipment there, noting the plaintiff otherwise would be unable to determine the manufacturer or supplier of the equipment that injured him for the purpose of determining liability); 37 A.L.R. 5th 645(1996)(and cases cited therein).[3] It does not follow, however, that an equitable bill could be elected to supersede the specific procedures outlined in the rules for obtaining information from another party in a pending action. *See e.g.,* 8 Wright & Miller, Federal Practice & Procedure, § 2209 (1970); *Lippmann v. Hydro–Space Technology, Inc.,* 77 N.J.Super. 497, 187 A.2d 31, 37–38 (N.J.Super.App.Div.1962) (holding, in applying local rule mirroring Fed.R.Civ.P. 34(c), that equitable bill of discovery unavailable where the remedies at law are adequate); *Arcell v. Ashland Chemical Co.,* Inc., 152 N.J.Super. 471, 378 A.2d 53(1977)(holding such equitable remedy appropriate where discovery could not be obtained under the present rules); 37 A.L.R. 5th 645, §§ 1–8(1996)(equitable bill of discovery invoked to make possible discovery not otherwise provided for in the rules). Where, as here, a civil action is properly commenced and the information sought is within the control of a named defendant, the parties are held to the discovery rules. The parties have cited to no authority that persuades us that a different result should follow here. Indeed, we have also found no controlling case law where such an equitable bill was permitted to obtain discovery from named *parties* to an action or to defeat a plaintiff's attempt to proceed on a duly filed Complaint.

### 2. Motion to Amend

 Etienne also argues her amendment to the Information should relate back to the original complaint under the relation

---

**3.** *Compare* 62 A.L.R. Fed. 935 (1983)(and cases cited therein)(discussing the limited application of Rule 34(c) to parties); *Humble Oil & Ref. Co. v. Sun Oil Co.,* 175 F.2d 670, 671 (5th Cir.1949)(rejecting attempt to "employ a substitute procedure for that provided in the rules").

back doctrine in Federal Rule of Civil Procedure 15(c). We need not reach this issue, however, because having been filed prior to a responsive pleading, Etienne's amendment was permissible under Federal Rule of Civil Procedure 15(a)(permitting amendment once as a matter of right prior to responsive pleading). In view of the foregoing, it is also not necessary to decide the appellant's alternative tolling arguments.

## III. CONCLUSION

In light of the federal rule's liberal pleading requirements, the Territorial Court erred in rejecting appellant's "Complaint," which included specific averments surrounding the facts and the transaction which formed the basis for a claim of medical malpractice and which undoubtedly provided fair notice of that claim to the appellee. Moreover, the appellant should have been permitted to amend the complaint once as a matter of course, where the amendment was offered prior to a responsive pleading being filed. Given our determination above, we need not reach the remaining issues.

### *ORDER OF THE COURT*

For the reasons stated in an accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the trial court's dismissal of the appellant's Complaint is **REVERSED**. It is further

**ORDERED** that this matter is **REMANDED** to the Territorial Court for further consideration not inconsistent with this Opinion.